# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DAN ALLEN,<br><br>        Plaintiff,<br><br>vs.<br><br>AGRELIANT GENETICS, LLC.,<br><br>        Defendant. | No. C15-3172-LTS<br><br>**ORDER ON DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

This case is before me on motion for partial judgment on the pleadings filed by defendant AgReliant Genetics, LLC (AgReliant). Doc. No. 15. AgReliant argues that Counts I, II and III of plaintiff's state court petition fail as a matter of law.[1] Plaintiff has filed a resistance (Doc. No. 16) and AgReliant has filed a reply (Doc. No. 17) and a supplement (Doc. No. 26).

## II. PROCEDURAL HISTORY AND BACKGROUND FACTS

AgReliant is an Indiana corporation in the business of selling agricultural products and seeds. In 2013, AgReliant hired plaintiff Dan Allen, an Iowa resident, to sell seeds in Iowa.[2] Various documents addressed the terms and conditions of Allen's

---

[1] AgReliant does not make any argument regarding Count IV of Allen's petition. *See* Doc. No. 15-1 at 2.

[2] Great Lakes Hybrids is a subsidiary of AgReliant. While much of the documentation in this case references "Great Lakes' Hybrids," I will refer to AgReliant and Great Lakes Hybrids jointly as AgReliant.

employment, including the calculation of selling bonuses. Allen received a bonus for his work during the 2013/2014 season, but not for the 2014/2015 season. AgReliant terminated Allen's employment in late 2014.

Allen filed this case in the Iowa District Court for Worth County on November 10, 2015. He alleges that: (1) AgReliant breached his contract by not providing certain sales-related bonuses; (2) he detrimentally relied on promises made by AgReliant; (3) AgReliant engaged in constructive fraud by not compensating Allen for clients he brought to the company; and (4) AgReliant defamed Allen. On December 31, 2015, AgReliant removed the case to this court. Doc. No. 2.[3]

### III. APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(c) states:

> (c) *Motion for Judgment on the Pleadings*. After the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c). As a general rule, motions brought under Rule 12(c) are reviewed under the same standards that apply to motions to dismiss brought pursuant to Rule 12(b)(6), which provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009), *cert. denied*, 561 U.S. 1026 (2010). In determining whether a plaintiff has stated a claim sufficient to survive a Rule 12(b)(6) motion to dismiss, the court must accept all of the plaintiff's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). "The court may consider the pleadings themselves, materials embraced by the pleadings,

---

[3] The parties have also filed a motion to quash (Doc. No. 47) and a motion for summary judgment (Doc. No. 50). Those motions will be decided separately after the parties have fully briefed the motion for summary judgment. I have not considered the documents attached to those motions in considering AgReliant's motion for partial judgment on the pleadings.

exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Electric Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)); *accord Mulvenon v. Greenwood*, 643 F.3d 653, 656-57 (8th Cir. 2011); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Bell Atl.*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677-78 (*citing Bell Atl.*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting Bell Atl., 550 U.S. at 555). And, "[w]here the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (*citing Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## IV. DISCUSSION

### A. Count I – Breach of Contract

#### 1. Standard

> The Iowa Supreme Court has stated, "Except when there is ambiguity, the question of whether a written instrument … binds the parties in contract is a question of law." *French v. Foods, Inc.*, 495 N.W.2d 768, 770 (Iowa 1993) (*citing Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 456 (Iowa 1989)); *see Bradshaw v. Brown Group, Inc.*, 258 F.3d 847, 849 (8th Cir. 2001) ("Whether an employer's policy manual binds the parties in contract is a question of law, unless the document is ambiguous." (*citing Thompson v. City of Des Moines*, 564 N.W.2d 839, 844 (Iowa 1997))).

*Hinshaw v. Ligon Indus., L.L.C.*, 551 F. Supp. 2d 798, 808 (N.D. Iowa 2008). However, "the question of whether the plaintiff has proved a breach of contract is for the judicial fact-finder. *See Davenport Bank & Trust Co. v. State Cent. Bank*, 485 N.W.2d 476, 480 (Iowa 1992) ('The existence and terms of a contract and whether the contract was breached are ordinarily questions for the jury.')." *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 658 (Iowa 2008). To prevail on a breach of contract claim, the plaintiff must prove:

> (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

#### 2. Arguments

The parties' arguments read as two ships passing in the night. In its brief, AgReliant argues:

> Mr. Allen's breach of contract claim is improperly premised on his misrepresentation that AgReliant and Mr. Allen had an "oral contract"

related to payment of any bonus. These "compensation agreements," as Mr. Allen characterizes them, were not oral contracts. They were written contracts, the terms of which were acknowledged and accepted by Mr. Allen.

It is notable that Mr. Allen did not attach a copy of the SY2015 Bonus Plan to his Complaint because the express language of the Plan precludes his breach of contact claim. The SY2015 Bonus Plan requires that the "DSM [such as Mr. Allen] must be employed by the company at the time bonus is to be paid in order to be eligible for any bonus payment on this 2014-2015 DSM bonus program." (Ex. B at 8) . . . The Bonus Payout Schedule provides that the first bonus to be paid under the SY2015 Bonus Plan was not payable until the 2nd payroll in September 2015. (Id.). That was nine months after Mr. Allen's employment relationship with AgReliant had terminated. Under Iowa law, it is a fundamental and well-settled rule that when a contract is not ambiguous, courts must simply enforce it as written. . .

To have been eligible for any bonus under the SY2015 Bonus Plan, Mr. Allen must have been employed by AgReliant at least through the second payroll in September 2015 (the first day bonuses were paid under the SY2015 DSM Bonus Plan). This was a condition precedent to earning any bonus under the SY2015 Bonus Plan. Mr. Allen's employment relationship was terminated on December 17, 2014 and, therefore, he failed to meet this condition precedent. Accordingly, at the time Mr. Allen's employment was terminated, he had earned no bonus under the SY2015 Bonus Plan.

Doc. No. 15-1 at 5-7. In its reply, AgReliant clarifies that it does not contest the existence of the contract, nor that Allen plead a breach of contract, simply that '[t]he material facts of Mr. Allen's breach of contract claim are not in dispute." Doc. No. 17 at 2.

In his response, Allen undertakes an extended discussion of the pleading standards that apply in Iowa's state courts. Doc. No. 16-1 at 4-6. However, federal law controls the standard for considering a motion to dismiss. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("[i]t is a long-recognized

principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.' *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).") (Stevens, J. concurring). The Eighth Circuit has stated:

> We apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law. *See Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 730 (8th Cir. 2011); *see also Shady Grove Orthopedic Assoc., v. Allstate Ins. Co.*, 559 U.S. 393, 130 S.Ct. 1431, 1442, 176 L.Ed.2d 311 (2010).

*Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013). Accordingly, much of Allen's resistance is irrelevant.

Allen also devotes several pages of his brief to the alleged facts giving rise to his discharge from AgReliant. In short, he contends he was discharged because his sales and customer base far outpaced what AgReliant expected, meaning that under the terms of his bonus plan he was entitled to more money than AgReliant was willing to pay. However, as AgReliant points out in reply, "[t]he reasons for AgReliant's decision to terminate Mr. Allen's employment relationship are immaterial to Mr. Allen's breach of contract claim" because Allen does not allege that his discharge was the breach of contract. Doc. No. 17 at 3.

As for AgReliant's argument that the breach of contract claim should be dismissed, Allen states:

> At the time of Allen's termination, Allen had submitted payments for seed corn sales in excess of $2,000,000.00 which demonstrated a sales increase in excess of 30,000 units. (Petition Paragraph 22). This is not a prospective bonus based upon tentative orders but rather a likely bonus quite foreseeable as the goods have already been paid for, just not yet delivered by the Defendant. Remaining performance required to secure the sales was generally left to the Defendant once they terminated Mr. Allen. . .
>
> It is clear that there are ambiguous elements of not only the bonus contract and how it was interpreted but also those oral modifications to it as between the parties and as applied by Company management in the guidance regarding seed sales. Many Iowa cases have addressed

6

> contractual disputes. *Hinshaw v. Ligon Industries, L.L.C.*, 551 F. Supp.2d 798, 808, decided in this Court, provides a clear analysis regarding the considerations of a motion for summary judgment and the ambiguities of a contract dispute. There is no doubt that the guidance and instruction by upper management provided to Mr. Allen as it relates to the performance of his job duties and thus his continued employment as a condition to receive his bonus certainly qualify as fact questions reserved for the trier of fact after an examination of the evidence.

Doc. No. 16-1 at 7, 8-9.

### *3. Analysis*

At the outset, I must decide whether to consider AgReliant's exhibits A and B (Doc. No. 15-1) or Allen's affidavit and other attached documents (Doc. No. 16-2) in ruling on this motion for judgment on the pleadings. As noted above, Rule 12(c) motions are considered under the same standards as Rule 12(b)(6) motions. The Eighth Circuit has stated:

> Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Our court has interpreted the phrase "matters outside the pleadings" to include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (citation omitted). Statements of counsel at oral argument raising new facts not alleged in the pleadings constitute "matters outside the pleadings" and, if considered by the district court, require treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment. *See, e.g., Smith v. Local No. 25, Sheet Metal Workers International Ass'n*, 500 F.2d 741, 744 (5th Cir. 1974) (treating a Rule 12(b)(6) dismissal order as automatically converted into summary judgment because district court relied on materials outside the pleadings, including oral argument).

*Hamm v. Rhone–Poulenc Rorer Pharms., Inc.,* 187 F.3d 941, 948 (8th Cir. 1999). However:

> [I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999). . . . *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir.2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.")

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n. 4 (8th Cir. 2003). Thus, to consider the AgReliant's exhibits and Allen's documents, I must either (1) make a determination that those materials are embraced by the pleadings or (2) convert AgReliant's motion to motion for summary judgment. Because AgReliant filed a subsequent motion for summary judgment, and because Allen addressed AgReliant's motion for judgment on the pleadings as a motion to dismiss, I find that conversion of the motion is not appropriate. I further find that Allen's affidavit and other supporting materials are not "embraced" by the pleading. Thus, I will not consider them in analyzing AgReliant's Rule 12(c) motion.[4]

By contrast, I will consider the 2014/2015 bonus plan because it is embraced by the pleadings. That plan is directly referenced in Allen's petition as providing the terms of the contract that AgReliant allegedly breached. *See* Doc. No. 3 at 3-4, 6. Indeed, the parties generally agree that the 2014/2015 bonus plan constitutes some part of a contract between AgReliant and Allen. Thus, there are only two questions relevant to

---

[4] As discussed in AgReliant's supplement (Doc. 26), filed on November 11, 2016, a portion of Allen's affidavit (Doc. No. 16-2) challenged the authenticity of a portion of AgReliant's exhibit A. In its supplement, AgReliant concedes that the signature receipt for the 2013/2014 bonus plan it attached as exhibit A did not actually belong to Allen, that there had been a mix up, and that Allen likely did not sign a receipt for the first bonus plan. Since this error would not have been addressed had Allen not filed an affidavit, the situation highlights one reason why considering exhibits in the context of a motion to dismiss is problematic. However, the 2013/2014 bonus plan is not particularly relevant to this motion for judgment on the pleadings so the error does not affect the outcomes herein discussed.

Count I. First, what are the terms of the contract? Second, did AgReliant breach the contract? The first question can be a question of law, the latter is clearly a question of fact.

Allen's petition lists "Count 1 – Breach of Oral Contract" and states that an "oral contract existed between the plaintiff, Allen, and the Defendant, AgReliant." Allen then states that "the terms of contract were set forth above in paragraph 10." Doc. No. 2-2 at 5. Paragraph 10 of the petition states:

> The compensation agreements were presented at two separate sales meetings in 2014 and 2015 and were later described in the provided materials identified as the "District Sales Manager Bonus Plan for the crop year 2014" and a separate "District Sales Manager Bonus Plan for the crop year 2015" which is generally similar to the plan offered the prior year."

Doc. No. 2-2 at 3. Paragraphs 20-23 of the petition then further describe the alleged bonus agreement for 2014/2015. Allen concludes: "AgReliant breached the contract by failing to provide commissions related to Allen's sales by withholding all earned bonuses for the 2015 growing season." Doc. No. 2-2 at 5.

AgReliant's argument is that the bonus plan sets forth the only contract between Allen and AgReliant and that it prohibits Allen from receiving a 2014/2015 bonus because Allen was not employed at AgReliant at the end of the contract period. The plan states: "DSM [District Sales Manager] must be employed by the company at the time the bonus is to be paid in order to be eligible for any bonus payments in this 2014-2015 DSM bonus program." Doc. No. 15-1 at 33. The plan then sets out the following bonus table:

## Bonus Payout Schedule

| Collection Percentage by Date | | Bonus Payable & Date | |
|---|---|---|---|
| 8/15/2015 | 100% | 100% | 2nd payroll in September |
| 10/1/2015 | 80% | 70% | Last payroll in October |
| | 81+% | Equal to Collection % | |
| 12/15/2015 | 80% | 70% | First payroll in January |
| | 81+% | Equal to Collection % | |
| 3/1/2016 | 80% | 70% | Second payroll in March |
| | 81+% | Equal to Collection % | |

*Id.* There seems to be no dispute that Allen was discharged on December 17, 2014. Based on the terms of the plan, and the date Allen's employment ended, AgReliant asks that I find that Allen failed to plead a plausible claim for breach of contract.

Clearly, Allen's petition is not artfully plead. However, Allen makes reference both to "oral" contracts and the 2014/2015 bonus plan in his breach of contract claim.[5] Thus, while it is possible that the terms of the contract are limited to those set forth in the bonus plan, it is also possible – as seemingly alleged in the petition – that the contract included additional oral terms. The petition put AgReliant on notice of Allen's claim of an oral agreement. Based on Allen's factual allegations, it is plausible that there was an oral agreement to the effect that if Allen adhered to the terms of the agreement, AgReliant was would pay the bonus for products sold. Consequently, at the pleadings stage I cannot accept as true AgReliant's assertion that the only terms of the contract were those set forth in the bonus plan. AgReliant's motion to dismiss Count I pursuant to Rule 12(c) will be denied.

---

[5] This is also supported by the allegations set forth in Count II, which reference oral promises made by AgReliant that Allen would be paid a 2014/2015 bonus.

.

## B. Count II – Detrimental Reliance (Promissory Estoppel)

### 1. Standard

Iowa law recognizes the doctrine of promissory estoppel:

> The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract. 4 Samuel Williston, Williston on Contracts § 8.4, at 41 (1992). "[C]ourts have applied the principle of estoppel in effect to form a contract, when the promisee suffered detriment in reliance on a … promise." *Id.*; *see also Friedman v. BRW, Inc.*, 40 F.3d 293, 296 (8th Cir. 1994) (stating that the effect of the doctrine of promissory estoppel "is to imply a contract in law where none exists in fact"); *Miller v. Lawlor*, 245 Iowa 1144, 1152, 66 N.W.2d 267, 272 (1954) ("'Promissory estoppel' is now a recognized species of consideration."); *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 257 N.W.2d 640, 647 n.16 (1977) (stating that in promissory estoppel claims, detrimental reliance on one side will suffice as "consideration"). When this court adopted the doctrine of promissory estoppel, we relied on the principles of law found in the Restatement of Contracts section 90 (1932). . . Because the Restatement (Second) of Contracts contains a nearly identical statement of these principles, we quote from the latter Restatement:
>
>> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
>
> Restatement (Second) of Contracts § 90, at 242 (1981). We have set forth the following elements as essential for recovery under a theory of promissory estoppel: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief." *Johnson v. Pattison*, 185 N.W.2d 790, 795 (Iowa 1971); *accord National Bank v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989); *In re Estate of Graham*, 295 N.W.2d 414, 418 (Iowa 1980).

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 48 (Iowa 1999).

### 2. Analysis

In its initial brief, AgReliant does not contend that the petition fails to make factual allegations sufficient to give rise to a plausible claim for promissory estoppel. Instead, AgReliant asserts that the parties had a written contract (the 2014/2015 bonus plan) and argues that under Iowa law, promissory estoppel is an implied contract claim that cannot exist when the parties' relationship is governed by an express contract. However, AgReliant acknowledges in its reply that Allen's promissory estoppel claim is an alternative theory. Doc. No. 17 at 4. At the pleadings stage, a plaintiff is entitled to assert alternative, and even contradictory, theories. *See, e.g., Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014).

While AgReliant is correct that a promissory estoppel claim would fail if an express contract exists that addresses the same subject matter, I have already found that Allen's allegations create a dispute as to the terms of the parties' contract. At this stage of the case, I cannot conclude that there are no circumstances under which Allen might have a plausible claim for promissory estoppel. AgReliant's motion to dismiss Count II will be denied.

### C. Count III – Constructive Fraud
#### 1. Standards
##### a. Motion to Dismiss Standard for Fraud Claims

Under Federal Rule of Civil procedure 9(b), when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b)'s 'particularity requirement demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556

(8th Cir. 2006) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003) (in turn citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920–21 (8th Cir. 2001)). "In other words, 'the complaint must identify the who, what, where, when, and how of the alleged fraud.'" *Olson v. Fairview Health Services of Minnesota*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quoting *Joshi*, 441 F.3d at 556). Under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *E-Shops Corp. v. U. S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012).

When allegations are "based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009) (finding Rule 9(b) is satisfied if "allegations are accompanied by a statement of facts on which the belief is founded."). However, "allegations of fraud regarding matters peculiarly within the opposing party's knowledge could be based on information and belief, so long as accompanied by a statement of the facts on which the belief was founded." *Florida State Bd. of Admin. v. Green Tree Financial Corp.*, 270 F.3d 645, 668 (8th Cir. 2001) (citations omitted).

### b. *Constructive Fraud*

Iowa law recognizes the doctrine of constructive fraud. *See Travelers Indem. Co. v. D & L Res., L.L.C.*, 888 N.W.2d 680 (Iowa Ct. App. 2016). A constructive fraud claim arises when the result of a fiduciary's actions perpetrates a fraud on the beneficiary, regardless of the fiduciary's intent. The Iowa Supreme Court has stated:

> What is called "constructive fraud" does not necessarily negative integrity of purpose. It has been defined as "an act which the law declares fraudulent without inquiry into its motive." Or "such contracts or acts as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead, or to violate confidence, are prohibited by law." It has also been said to be such fraud

13

> as "the law infers from the relationship of the parties or the circumstances by which they are surrounded, regardless of any actual dishonesty of purpose." *Curtis v. Armagast*, 158 Iowa 507, 520, 138 N.W. 873, 878 (1912) (citations omitted).

*In Interest of C. K.*, 315 N.W.2d 37, 42 (Iowa 1982). "Iowa law requires a fiduciary or confidential relationship between a plaintiff and defendant in constructive fraud cases." *Rakes v. Life Inv'rs Ins. Co. of Am.*, 622 F. Supp. 2d 755, 769 (N.D. Iowa 2008). Put another way:

> Constructive fraud does not necessarily negative integrity of purpose and is, "such contracts or acts, as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead, or to violate a confidence, are prohibited by law". The doctrine arises from the very conception and existence of a fiduciary relation, and in every transaction in which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts the burden of proving affirmatively its compliance with equitable requisites, upon the party receiving the possible benefit. This presumption, however, arises only where, as in this case of child and parent, the child is the dominant personage in that relationship and the parent has become the dependent one, trusting himself and his interests to the advice and guidance of the child.

*Stout v. Vesely*, 228 Iowa 155, 290 N.W. 116, 117 (1940).

Under Iowa law, "[a] fiduciary relationship includes a relationship in which one is under a duty to act for the benefit of the other as to matters within the scope of the relationship. *Merritt v. Easterly*, 226 Iowa 514, 517-18, 284 N.W. 397, 399 (1939)." *Mendenhall v. Judy*, 671 N.W.2d 452, 455 (Iowa 2003). The Iowa Supreme Court has approvingly-cited the following definition:

> [fiduciary relationship is a] very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another. One founded on trust or confidence reposed by one person in the integrity and fidelity of another. A 'fiduciary relation' arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship exists when there is a reposing of

faith, confidence and trust, the placing of reliance by one upon the judgment and advice of the other.

*Kurth v. Van Horn,* 380 N.W.2d 693, 695–96 (Iowa 1986) (citing Black's Law Dictionary 564 (5th ed. 1979)).

### *2. Argument*

AgReliant argues:

> It is well settled under Iowa law, that there is no duty of good faith and fair dealing between an employee and an employer. *See, e.g., Fitzgerald v. Salsbury Chern., Inc.*, 613 N.W.2d 275, 281 (Iowa 2000) (holding that the Iowa Supreme Court has "consistently refused to adopt a covenant of good faith and fair dealing with respect to at-will employment relationships."); *Neilson v. Long Lines Ltd.*, 335 F. Supp. 2d 944, 967 (N.D. Iowa 2004) (cases cited therein).
>
> Moreover, to establish a claim for constructive fraud, Iowa law requires the plaintiff to establish that there was a "fiduciary or confidential relationship" between the plaintiff and the defendant. "A confidential relationship is characterized as one where one party is able to exercise extraordinary influence over the other." *Rakes v. Life Investors Ins. Co.*, 622 F.Supp.2d 755, 669 (N.D. Iowa 2008) (cases cited therein). In the absence of a confidential relationship, the constructive fraud claim must fail. *Id*.
>
> Mr. Allen does not even allege that such special relationship existed between himself and AgReliant. In any event, courts have rejected the existence of a general fiduciary or confidential relationship between an employer and an employee. *See, e.g., Fry v. Mount*, 554 N.W.2d 263, 266 (Iowa 1996). In Fry, the Iowa Supreme Court held that an employment relationship ''was 'adversarial' in nature, not advisory." *Fry v. Mount*, 554 N.W.2d 263, 266 (Iowa 1996). The Fry Court further concluded that an employer owed no duty to the employee related to representations about the employment relationship and concluded that the tort of negligent misrepresentation has no application in an employment relationship. *Fry*, 554 N.W.2d at 267; *Alderson v. Rockwell Int'l Corp.*, 561 N.W.2d 34, 36 (Iowa 1997).

> Furthermore, even if Mr. Allen could assert a constructive fraud claim against AgReliant (he cannot), the meager allegations of his Complaint fail to allege fraud with the specificity required by Rule 9 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, AgReliant is entitled to judgment on the pleadings as to Count III of Plaintiffs Complaint.

Doc. No. 15-1 at 9-10. Allen contends:

> AgReliant/GLH owed some duty of good faith and fair dealing to Allen through their relationship in ways beyond simply providing a job. This duty extends to requiring the Defendant to honor the spirit of their agreements and their promises. While Iowa law is well settled in permitting "termination at any time for any lawful reason" as indicated by the Defendant, this does not provide safe harbor for companies seeking to avoid financial bonus and commission obligations by terminating their employees. This good faith and fair dealing develops the trust that is the basis of the seed sales business relationship.

Doc. No. 16-1 at 10.

### 3. *Analysis*

As noted above, a constructive fraud case cannot arise in the absence of a constructive or fiduciary relationship. Iowa law recognizes that an employee may owe fiduciary obligations to his or her employer under certain circumstances. As the United States District Court for the Southern District has noted:

> Iowa law "recognize[s] the existence of a common law duty of loyalty which is implied in employment relationships." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 598 (Iowa 1999). "[C]laims by employers against employees for damages resulting from unfair competition and self-dealing are often brought as claims for breach of fiduciary duty. This is because a principal-agent relationship gives rise to a fiduciary duty of loyalty, and an employer-employee relationship can be closely associated with a principal-agent relationship." *Id*. at 599 (internal citations and quotations omitted). An employee who is in a position of responsibility is considered "[a]n agent [because the employee] usually has greater authority

> to act for the principal, such as negotiating contracts, while an employee typically renders services at the direction of the employer." *Id*. Iowa law recognizes that "directors and officers of a corporation have a fiduciary duty to act in all things wholly for the benefit of the corporation." *Greenwood*, 629 N.W.2d at 375. . . The Iowa Supreme Court has also expressly recognized that an employee generally has a fiduciary duty to maintain the secrecy of an employer's trade secrets or proprietary information. *See Zumaris*, 538 N.W.2d at 648. While the Court recognizes that the "circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of the individual case," *Kurth*, 380 N.W.2d at 696.

*NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1082–83 (S.D. Iowa 2009).

Here, of course, Allen argues that the reverse is true – AgReliant allegedly owed fiduciary obligations to him. He cites no legal authority for this proposition. Perhaps more importantly, his petition includes no factual allegations that, if true, would support findings (1) that AgReliant owed obligations to Allen of a fiduciary or confidential nature and (2) that AgReliant breached any such obligations. This is especially true in light of the heightened pleading obligations that arise under Rule 9(b). As such, I find that the petition fails to adequately plead a claim for constructive fraud under Iowa law. AgReliant's motion to dismiss Count III will be granted.

## V. CONCLUSION

For the reasons set forth herein, defendant's motion (Doc. No. 15) for partial judgment on the pleadings is **granted in part** and **denied in part**. The motion is **granted** with regard to Count III. That count is hereby **dismissed**. The motion is **denied** as to Counts I and II. This case will proceed with regard to Counts I, II, and IV.

17

**IT IS SO ORDERED.**

**DATED** this 20th day of March, 2017.

                             _____
                             LEONARD T. STRAND
                             CHIEF UNITED STATES DISTRICT JUDGE